UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 16-cr-66 (VAB) |
| RONNETTE BROWN | |

**ORDER ON MOTION FOR ACQUITTAL**

After a jury trial, Ronnette Brown ("Defendant"), was convicted on May 26, 2017, ECF No. 84, of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count One) and twenty-three counts of health care fraud in violation of §§ 1347 and 2 (Counts Two through Twenty-Four), representing all counts in the Indictment. ECF No. 1.

On May 31, 2017, Ms. Brown filed a motion for an extension of time until June 30, 2017 to file a motion for a judgment of acquittal, ECF No. 78, and a motion for an extension of time until June 30, 2017 to file a motion for a new trial. ECF No. 79. The Court granted both motions. ECF No. 80. On June 29, 2017, Ms. Brown filed a motion for acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. ECF No. 88.

For the reasons that follow, the Court **DENIES** Ms. Brown's motion for acquittal.

**I. FACTUAL BACKGROUND**

At trial, the Government presented testimony from thirty-one witnesses. *See* Witness List, ECF No. 75. Ms. Brown did not call any witnesses. A brief and non-exhaustive summary of the evidence presented at trial is below.

1

The evidence showed that Ms. Brown was the owner and operator of We-MPACT LLC ("We-MPACT"), a social services agency in Bristol, Connecticut. The evidence at trial established Ms. Brown's close involvement in all aspects of the operations at We-MPACT. Ms. Brown also established rules requiring We-MPACT contractors, also referred to as clinicians, to submit records of each encounter with a client, "DAP notes," within 24 hours of each encounter with a client. We-MPACT Clinicians were also required to timely submit payroll invoices, or "TRI Forms," to We-MPACT every two weeks. Clinicians could be penalized by as much as $10 for each service they provided for failure to submit DAP notes or TRI forms. Ms. Brown set the hourly rate to be paid to clinicians for each client, and the number and frequency of services that clinicians could provide, communicating these to Angela Perry, who passed on this information to the clinicians.

The evidence also showed that Ms. Brown submitted claims to Medicaid for the services purportedly rendered by We-MPACT. Specifically, the evidence showed that Brown's computer was used to submit claims electronically to Medicaid for services that We-MPACT purportedly provided to their clients. These claims were generally for psychotherapy services, purportedly rendered by licensed clinical social workers. The evidence showed that Ms. Brown obtained provider numbers from Medicaid for the licensed clinical social workers that purportedly rendered these services, and that Ms. Brown used her computer to submit claims to Medicaid using Medicaid's website.

The billing codes used for these Medicaid claims represented that the psychotherapy services were personally provided by the licensed clinical social worker identified as the provider for each claim. Instead, the testimony showed that We-MPACT's services were, in fact, rendered by individuals who were not licensed social workers, and that the services

generally consisted of only mentoring services provided to children, which are not covered by Medicaid.

For Counts Two through Twenty-Four of the Indictment, the twenty-three counts of health care fraud, each count involved a specific claim submitted to Medicaid for one of eight different clients when, in fact, no service of any kind had been provided to the client. The Government presented the testimony of the clients, or their family members, regarding the clients' interactions with We-MPACT, and certain periods of time where each client did not receive any services from We-MPACT, including on the specific dates associated with each of the twenty-three health care fraud counts in the Indictment. Representatives of Medicaid and the We-MPACT clinician who worked with each client then testified that claims were submitted to Medicaid for services for each of the clients for dates when the clients did not, in fact, receive any services of any kind from We-MPACT. Despite the record-keeping requirements that We-MPACT imposed on clinicians, the evidence showed that there were no DAP notes or TRI forms for any of the services provided to the clients on the particular dates charged in Counts Two through Twenty-Four of the indictment.

The Government also presented the testimony of Madeline Mazariegos, a licensed clinical social worker, who testified that she worked with We-MPACT, but that she never gave anyone at We-MPACT permission to obtain a Medicaid provider number in her name. Ms. Mazariegos further testified that she did not provide any services to We-MPACT clients that would be eligible for Medicaid billing, thus We-MPACT could not properly submit Medicaid claims with her as the rendering provider. Yet, records from Medicaid's website showed that Ms. Brown logged into the website, obtained a provider number for Ms. Mazariegos at We-MPACT, and billed the services associated with Counts Twenty through Twenty-Four of the

Indictment to Medicaid, with Ms. Mazariegos identified as the provider of the services. The evidence showed that Ms. Brown's computer submitted at least one of these claims, as well as other Medicaid claims under the provider number for Ms. Mazariegos.

## II. STANDARD OF REVIEW

Under Rule 29, the Court "on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The defendant may file a motion for acquittal "within 14 days after a guilty verdict or after the court discharges the jury, whichever is later," and the "defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." Fed. R. Crim. P. 29(c).

"A motion for judgment of acquittal under Rule 29 focuses upon the sufficiency of the government's evidence in its case in chief to sustain a conviction." *United States v. Botti*, 722 F. Supp. 2d 207, 209 (D. Conn. 2010), *aff'd*, 711 F.3d 299 (2d Cir. 2013). "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). The defendant "who challenges the sufficiency of the evidence to support his conviction bears a heavy burden," because "[n]ot only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor," but "the jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted). Thus, "a court may grant a judgment of acquittal only if the evidence that the defendant committed the crime alleged was nonexistent or meager." *Id.* (citing

4

*United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). Furthermore, the "jury's verdict may rest entirely on circumstantial evidence." *Id.*

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal," because "it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Jackson*, 335 F.3d at 180. "The traditional deference accorded to a jury's verdict is especially important when reviewing a conviction for conspiracy because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *Id.* (citing *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992)).

## II. DISCUSSION

Following a jury verdict, a defendant typically must file a motion for acquittal under Rule 29 "within 14 days." Fed. R. Crim. P. 29(c). Ms. Brown was convicted by the jury on May 26, 2016, ECF No. 84, and on May 31, 2017, less than fourteen days after the jury returned the verdict, she filed a motion for an extension of time until June 30, 2017 to file a motion for a judgment of acquittal. ECF No. 68. The Court granted Ms. Brown's motion for an extension of time. ECF No. 80. Ms. Brown then filed her current motion for acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure on June 29, 2017, within the extension of time that the Court had granted. ECF No. 88. Ms. Brown's motion is, therefore, timely.

Ms. Brown's motion argues that there was an absence of evidence "from which a jury could conclude that [she] knew that the clinicians" from We-MPACT "had not continued to see" their patients. Motion at 2, ECF No. 88. In short, Ms. Brown argues that "[t]here was a testimonial evidentiary gap between what the clinicians knew, that . . . the patients were not being seen, and what [Ms. Brown] knew." *Id.* Ms. Brown concedes that a portion of the

5

Medicaid claims she submitted were false, but argues that the evidence is not sufficient to show that she "specifically intended to submit false claims or that she knew that the claims were for services not bonafide."[1] *Id.*

The Court instructed the jury that the crime of health care fraud contains three elements: (1) "there was a scheme to defraud in connection with the delivery of or payment for health care benefits, items, or services, as charged," Jury Instructions at 23, ECF No. 83; (2) that the defendant "knowingly and willfully executed or attempted to execute the scheme with the intent to defraud," *id.* at 26; and (3) "that the target of the scheme was a health care benefit program." *Id.* at 27. Ms. Brown's motion challenges the sufficiency of the evidence as to the second element, that she knowingly and willfully executed the scheme with the intent to defraud.

When a court considers a motion for acquittal under Rule 29, the "jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 335 F.3d at 180. As the Court explains below, because a "rational trier of fact" could have found "beyond a reasonable doubt" that Ms. Brown knowingly and willfully filed the Medicaid claims at issue in Counts Two through Twenty-Four of the Indictment with the intent to defraud, the Court must deny Ms. Brown's motion. *Id.*

Among other evidence, the Government presented evidence that showed that Ms. Brown was primarily responsible for managing We-MPACT and its finances, and that she had access to and required the submission of DAP notes and TRI forms from clinicians for all services that each clinician provided to each client. Two clinicians, Michael Scott, and Paula Silva, testified

---

[1] Ms. Brown's motion does not appear to challenge the sufficiency of the evidence as to Count One of the Indictment, for conspiracy to commit health care fraud. At trial, Ms. Brown's alleged co-conspirator, Beverly Coker, testified as to all aspects of the conspiracy, and the evidence showed that Ms. Coker wrote several checks to Ms. Brown for Ms. Brown's share of the proceeds of the conspiracy. Two other individuals, Maurice Sharpe, and Melissa Sturz, testified that claims submitted to Medicaid for services purportedly provided to their respective children in connection with Count One, were for services that were, in fact, never provided to or received by their children. Thus, Ms. Brown would not prevail on a motion for acquittal as to Count One of the Indictment.

regarding Ms. Brown's efforts to recreate missing records for a Medicaid audit in 2012, showing that, at that time, Ms. Brown was aware that notes and other records were required when billing Medicaid.  Ms. Brown also sent an email to clinicians describing a Medicaid rule limiting reimbursement to one unit of psychotherapy service per patient per day, and Ms. Brown instructed clinicians to break services down into separate DAP notes for 90-minute increments in light of that rule.  A reasonable jury could conclude that this evidence establishes that Ms. Brown was aware of Medicaid billing rules.

The evidence also showed that Ms. Brown instructed Ms. Perry on how clinicians should format DAP notes and that Ms. Brown required clinicians to timely submit DAP notes and TRI forms, which were used to calculate the payroll amounts owed to clinicians.  The evidence showed that the DAP notes were referred to as invoices from the clinicians to We-MPACT.  The evidence showed that Ms. Brown directed and controlled, and was aware of, the operations at We-MPACT and the services that the clinicians were performing.  A reasonable jury could conclude that this evidence establishes that Ms. Brown was not ignorant that certain services for which We-MPACT filed Medicaid claims had not actually been performed.

Furthermore, the testimony of Special Agent Anna Ferreira-Pandolfi, who performed an analysis of We-MPACT's payroll records, DAP notes, and the Medicaid claims that Ms. Brown submitted, showed that, for 2012, over 71% of the claims for psychotherapy services that Ms. Brown submitted to Medicaid were not supported by any of We-MPACT's records; for 2013, over 83% of the claims were unsupported by any records.  Also, the testimony of Ms. Mazariegos and another licensed social worker listed as the provider for other Medicaid claims that gave rise to Counts Two through Twenty-Four of the Indictment, Dorothea Hamilton,

7

established that Ms. Brown knew that Ms. Mazariegos and Ms. Hamilton did not actually provide the services billed to Medicaid under their respective provider numbers.

Given all of the evidence presented at trial, a reasonable jury could have concluded that the second element of all of the health care fraud counts had been satisfied and therefore, properly convicted Ms. Brown on Counts Two through Twenty-Four of the Indictment.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Ms. Brown's motion for acquittal.

SO ORDERED at Bridgeport, Connecticut, this 25th day of August, 2017.

    /s/ Victor A. Bolden  
Victor A. Bolden  
United States District Judge